ORIGINAL

FILED
MAY 19 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**TKC COMMUNICATIONS, LLC,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**
**SERVE: Michael B. Mukasey**
**U.S. Attorney General**
**U.S. Department of Justice**
**Office of the U.S. Attorney General**
**950 Pennsylvania Avenue, N.W.**
**Washington, DC 20530-0001**

**Defendant.**

**Case No.** 08-358 C

## COMPLAINT

For its Complaint against Defendant The United States Of America (the "United States" or "Defendant"), Plaintiff TKC Communications, LLC ("TKCC" or "Plaintiff") states as follows:

## I. Parties

1. TKCC is a Native Alaskan limited liability company organized under the laws of the State of Alaska. TKCC has a contract with the United States that is the subject of this Complaint.

2. The United States has a contract with TKCC that is the subject of this Complaint.

## II. Jurisdiction

3. On December 11, 2003, TKCC contracted with the United States through the Department of the Interior ("DOI"), an agency of the United States Government, to provide goods and services under Master Contract No. 1435-04-04-CT-73132 ("the Contract") in

accordance with a Statement of Work ("SW") incorporated into the Contract. A copy of the Contract is attached hereto as Exhibit A.

4. The Contract is "a fixed-price construction/services and time and material labor hour, indefinite quantity, indefinite delivery order contract," (Ex. A, p. A-02), and provides: "The term of this contract is sixty (60) months from the date of award or until the aggregate total of all Delivery Orders issued against this contract equals the maximum dollar threshold cited above, whichever shall come first." Ex. A, p. A-02. The Contract is a Section 8(a) set-aside for an Alaskan Native Corporation.

5. GovWorks, also known as the DOI Franchise Fund, provides acquisition services to DOI and other federal agencies. DOI authorized GovWorks to issue task orders and to administer the Contract on behalf of DOI.

6. On September 15, 2005, GovWorks issued an Order for Supplies or Services No. 0405DO44761 ("Task Order") against the Contract. A copy of the Task Order is attached hereto as Exhibit B. The Task Order states that it is a "FFP [Firm-Fixed-Price] Lease to Ownership Order for the hardware and software in support of the DOI EMS Project in accordance with the SOO [Statement of Objectives] dated 10/8/05, Contract No. 1435-04-04-CT-73132 and TKCC Proposal dated 9/15/05. The period of performance is a base from 9/15/05 through 9/30/05 and three 12 month option periods." Ex. B, p. B-03.

7. The Task Order further provides:

> STATEMENT OF GOVERNMENT INTENT:
>
> (a) The Government and the Contractor understand that a delivery order issued is a lease arrangement and contemplates the use of the product for the term of the lease specified in such delivery order (the "Lease Term"). In that regard, the Ordering Agency, as lessee, understands that the lease arrangement contained herein and the rate established for the delivery order are premised on the Ordering

> Agency's intent to fulfill that agreement, including acquiring products for the period of time specified in the order. [. . . .]
>
> (b) Each ordering office placing a delivery order under the terms of this option intends to exercise each renewal option and to extend the lease until completion of the Lease term <u>so long as the need of the ordering office for the product or functionally similar product continues to exist and funds are appropriated.</u>

Ex. B, p. B-09 (emphasis added).

8. On October 1, 2005, GovWorks issued a modification to the Task Order ("Mod 1"). Mod 1 exercised Option Period 1 and provided for the payments due for that option period. The terms of the Task Order block-quoted in ¶ 7 <u>supra</u> were restated in their entirety in Mod 1. Mod 1 is attached hereto as Exhibit C.

9. On September 29, 2006, the United States through GovWorks informed TKCC that it would not exercise Option Period 2. A copy of the termination letter is attached hereto as Exhibit D.

10. On January 25, 2007, pursuant to 41 U.S.C. § 605(a) and FAR § 33.206, TKCC filed a claim with the Contracting Officer in the amount of $13,547,786.30 based on the Contract and the Task Order. TKCC's claim is attached hereto as Exhibit E.

11. On June 11, 2007, the Contracting Officer issued a final decision which denied TKCC's claim. A copy of the denial letter is attached hereto as Exhibit F. TKCC has properly exhausted its administrative remedies.

12. Because this Complaint is founded upon an "express or implied contract with the United States," this Court has jurisdiction over this matter. <u>See</u> 28 U.S.C. Section 1491(a)(1).

## III. Factual Allegations

13. Prior to FY2005, DOI did not have a unified electronic mail system. Various offices and bureaus within DOI used IBM Lotus Domino/Notes, Novell GroupWise and Microsoft Exchange/Outlook email systems and collaborative tools. DOI decided to investigate whether it should modify its various electronic mail platforms into a single unified system. DOI authored a document entitled, "DOI Enterprise Messaging Service ("EMS") Project: Statement of Objectives for EMS Operations Support" (the "Original SOO"). The Original SOO was dated October 8, 2004. A copy of the Original SOO is attached hereto as Exhibit G. Upon information and belief, the Task Order's reference at page B-03 to "the S00 dated October 8, 2005" was a typographical error and should have referred to the Original SOO which was dated October 8, 2004.

14. During the course of FY2005, DOI reviewed technical proposals for the implementation of an electronic messaging system based on the Original SOO. The EMS Project called for a uniform email system across the fourteen bureaus and offices that constitute DOI. By the summer of 2005, DOI determined that it would implement the EMS Project through a phased migration rather than for all of its bureaus and offices simultaneously.

15. Multiple vendors submitted proposals to provide the EMS Project, including TKCC. DOI assembled an evaluation team comprised of bureau technical representatives and the DOI Chief Technology Officer ("CTO") to assess the proposals. DOI determined that TKCC's proposal was the strongest technical proposal.

16. In June 2005, DOI's Investment Review Board ("IRB") approved funding for the EMS Project in the amount of $15 Million. As a result, the Task Order was issued. <u>See</u> ¶ 6, <u>supra</u>.

17. The objective of the Task Order was "to promote a fully connected, virtual organization by providing its users with a rich set of tools and services supporting secure any-time, any-place collaborations." Ex. G, p. G-08. DOI expected to achieve management, economic, and functional goals and outcomes consistent with the DOI IT Strategic Plan, Enterprise Architecture efforts, and Capital Planning and Investment Control ("CPIC") guidelines. Specific Departmental objectives expected to be achieved as a result of the Task Order were:

a. Economic Efficiency;

b. Secure Messaging Environment;

c. Improvement in Email Service; and,

d. Breakdown of Barriers to Collaboration.

See Ex. G, p. G-10, Table 6-1.

18. DOI represented and agreed in the Task Order that it needed much of the hardware and software listed in TKCC's Proposal to implement the EMS Project. A copy of TKCC's Proposal is attached hereto as Exhibit H. Compare Ex. B, pp. B-06 through B-09 with Ex. H, pp. H-17 through H-34.

19. DOI explicitly demanded that the EMS Project use Microsoft Exchange. The Original SOO states the following:

> **PURPOSE**
>
> **The Department of Interior (DOI) is seeking proposals for contract services to support a DOI managed, Microsoft Exchange based electronic messaging service (referred to herein as DOI Enterprise Messaging Services, or EMS).**
>
> **The desired result is a consolidated departmental messaging service, based on Microsoft (MS) Exchange, operated within a DOI enterprise management and operations control structure, conforming to enterprise architecture and strategic plan goals,**

> **and supported through contracted services to be acquired through this Solicitation.**

Ex. G, p. G-06.

20. On October 1, 2005, Matthew H. Steward of DOI issued an "essential use questionnaire" (the "Questionnaire") that set out DOI's intent concerning the EMS Project in detail. A copy of the Questionnaire is attached hereto as Exhibit I. DOI made the following representations, among others, in the Questionnaire.

> ☐ What is the product being financed? How does the product enable the users to perform this essential function? Please be specific.
>
> . . .
>
> Hardware and software to accomplish the email migration project. The HW/SW will be set up and the bureaus legacy mail environments will be converted to Exchange 2003. Once converted the end-users will be using Exchange 2003 to send and receive email.
>
> ☐ What is the agency's alternative to using this product; can the tasks that the product performs be performed in another way?
>
> The only other alternative would be to keep the legacy environments going, but the risk of email failure with these legacy environments is very high with a severe impact to the Department's mission and ability to conduct business.
>
> ☐ Do the users plan to use this product for the full term of the lease?
>
> Yes.
>
> ☐ Is there any reason the product would no longer be needed during the entire lease term?
>
> No.
>
> ☐ To the best of his/her knowledge, does the government intend to appropriate funds in its next budget for the continuation of lease payments?

Yes.

. . .

☐ What is the Government's current plan with regard to the option years of the lease?

The current plan is to have the individual bureaus and offices support the migration project. As they decommission their legacy environments, cost savings will be reaped to support the new environment. There is an operations and support component for the new system; however, it is not related to this lease. The lease is only for the hardware and software used to build the new messaging environment.

Ex. I, pp. I-1, I-2, I-3.

21. DOI made these representations in order to induce TKCC to perform under the Task Order, and TKCC did so perform.

22. In reliance on the Task Order and DOI's affirmative statements, TKCC bought and provided the equipment necessary to perform the Task Order. The cost of this equipment to TKCC under Mod 1 was $15,417,088. The lease price for the equipment under Mod 1 was $17,547,786.30. DOI paid the $4,000,000.00 price for Option Period 1. The balance of $13,547,786.30 remains unpaid.

23. After signing the Task Order and approving all of the equipment specifically listed thereon, DOI continuously changed the scope of the EMS Project:

- On November 3, 2005, DOI issued a document entitled, "DOI EMS Statement of Objectives ["SOO"] Addendum to the SOO for EMS Operations Support dated October 8, 2004" (the "First Revised SOO"). DOI requested that TKCC provide a revised cost proposal to the First Revised SOO as soon as possible. TKCC provided the revised cost proposal in a timely manner.

- On December 14, 2005, DOI issued another revised Statement of Objectives (the "Second Revised SOO"). DOI required TKCC to submit a cost proposal in response

to the Second Revised SOO on or before December 16, 2005 at 10:00 a.m.

- On December 21, 2005, representatives of TKCC and DOI had a meeting to discuss EMS Project objectives. As a result of that meeting, on January 5, 2006, DOI issued another revised Statement of Objectives (the "Third Revised SOO").

- On December 24, 2005, a conference call was conducted between DOI and TKCC representatives. As a result of that conference call, on January 27, 2006, DOI issued another revised Statement of Objectives (the "Fourth Revised SOO"). DOI required TKCC to submit an updated proposal by January 31, 2006 at 5:00 p.m. TKCC did so.

24. A number of the 14 offices and bureaus that comprise DOI resisted the EMS Project. TKCC led a series of three "town hall" meetings to discuss implementation of the EMS Project. Between December 2005 and late spring 2006, DOI assigned three different project teams to this Task Order. With each new team, TKCC had to repeat work previously accomplished because DOI failed to ensure any continuity within the teams or turnover of information. Throughout this period, DOI and its subordinate bureaus and offices continually sought to expand and change the scope of the EMS Project from that agreed to by DOI in September 2005.

25. In February 2006, TKCC representatives met with DOI. DOI had unilaterally changed the scope of the work again from that contained in the Fourth Revised SOO. DOI described the significant changes it mandated as:

- Requirement for supporting workstations including Mac OS 9.x or higher, Sun Solaris, HPUX, IBM AIX and Linux workstations through the native client **and** web browser interface;

- Proposed quota is 250 MB for general users with quota threshold warning at 200 MB. (When users reach the 250 MB mail file size, email is archived to the archive servers maintained by the EMS system);

- Allow for Email archiving - Contractor shall provide unlimited, automatic archiving and archive view of email to the email content management system for all users. All users shall be able to view and delete messages from the archive and archive view;

- The system shall prompt the sender before sending messages with large attachments as to whether they wish to continue with attaching the file(s) or reference the file through a URL or other shared file capability;

- If the user wishes to continue with a large file(s) the system shall prompt the user to provide a charge code for chargeback;

- The system shall provide a report of the file sizes and potential chargeback amounts; and

- The system shall provide the capability to identify the type of email and specify a NARA records schedule.

26. Following a second meeting in March 2006, the CTO stated that DOI's unilateral increases to the scope of the EMS Project might not have funding.

27. In April 2006, in an effort to respond to DOI's continually changing demands, TKCC indicated its willingness to work with DOI on swapping out the hardware which DOI had approved in the Task Order but to which it later objected.

28. At the request of the CTO, a third meeting followed in June 2006. At this meeting, DOI for the first time repudiated further performance under the Task Order and sought to give TKCC all of the equipment back.

29. On August 23, 2006, GovWorks sent TKCC a Request for Proposal that included additional EMS requirements unilaterally imposed by DOI beginning in March. These requirements were contained in another SOO (the "Fifth Revised SOO"). A complete copy of the RFP is attached hereto as Exhibit J. TKCC responded to the RFP on time despite an unreasonable deadline.

30. By letter dated September 29, 2006, the United States wrongfully refused to exercise Option Period 2 and terminated the Task Order. See Exhibit D. TKCC provided proper notice protesting this change in the scope of the work.

31. The Task Order was terminated because DOI had decided it no longer wanted the hardware and software which comprised the EMS Project proposed by TKCC and approved by DOI in FY2005.

32. As set forth in paragraph 7, supra, DOI obligated itself to exercise option periods 2 and 3 "so long as the need of the ordering office for the product or a functionally similar product continues to exist and funds are appropriated." Ex. B, p. B-09.

33. DOI had sufficient appropriated funds to exercise Option Period 2. There is no restrictive language in either the DOI fiscal year 2006 appropriation act or in the continuing appropriations resolution for fiscal year 2007 that would prevent DOI from using appropriated funds to pay for Option Period 2, effective October 1, 2006. The language in Exhibit D that DOI had a "lack of funds" is not the standard set out in the Task Order and was legally insufficient for DOI to refuse to exercise the remaining option periods. DOI's decision was not based on a lack of appropriations. Rather, DOI simply changed its mind because of resistance to the EMS Project from the various bureaus and offices of DOI.

34. DOI has a continuing need for the equipment that is the subject of the Task Order or functionally similar equipment. The agencies within DOI are continuing to work on interconnected email systems that use functionally similar equipment and performs functionally similar tasks. Upon information and belief, several agencies and bureaus within DOI have or are considering issuing RFPs and purchasing hardware and software from other vendors to create a unified email system using Microsoft Exchange/Outlook.

35. Instead of implementing the EMS Project, the IRB has decided that the bureaus and offices of DOI will migrate from their legacy systems to Microsoft Exchange on a bureau by bureau basis. When this migration is complete, the new hardware and software used by DOI will be functionally similar to the hardware and software contemplated by the Task Order.

36. TKCC would never have accepted the Task Order if DOI possessed the unfettered right to refuse to exercise the option periods and "migrate" on a bureau by bureau basis to a Microsoft system using hardware and software purchased from other vendors.

37. The hardware and software purchased by TKCC for this project had other uses besides email. DOI could have chosen to reutilize this equipment in any number of ways. DOI did not explore any of these alternative uses. Indeed, most of the hardware purchased by TKCC, delivered to DOI and ultimately returned to TKCC had never even been taken out of the box.

38. DOI has a continuing need for an email system. The Questionnaire stated that loss of email service would result in "a severe impact to [DOI's] mission and ability to conduct business." Ex. I, p. I-02. DOI continues to use email through its legacy systems, including Microsoft Exchange and is in the process of converting to a new system using functionally similar equipment obtained from vendors other than TKCC. In this day and age, no business or government entity can operate effectively without email service.

39. By refusing to exercise Option Periods 2 and 3 in violation of the Task Order, the United States has breached the contract.

40. DOI was without discretion under the contract and the circumstances that existed to refuse to exercise the option periods. Accordingly, it was obligated to exercise those option periods. Furthermore, DOI is equitably estopped from refusing to exercise the option periods. As a result, DOI is liable, *inter alia*, to TKCC for damages.

41. DOI represented to TKCC that DOI intended to use the equipment for the full lease term and to pay TKCC the full lease price negotiated by the parties.

42. TKCC obtained and provided the equipment to DOI in reliance on DOI's representation that it fully intended to use and pay for the equipment for the full term of the lease.

43. The Task Order pricing arrangement was established based on DOI's stated intent to fulfill the agreement and acquire the products. TKCC offered, and DOI readily accepted, favorable prices that TKCC would not have offered if DOI could merely not renew the lease because it wanted to pursue other priorities.

44. Had TKCC known that DOI would only pay for the full lease term if it had no other priorities for its appropriated funds, TKCC would not have given such favorable pricing in the first year or extended the pricing on such favorable terms for the balance of the lease.

45. DOI's representations that it intended to use the equipment for the full lease term are belied by DOI's conduct. Almost from the very beginning, DOI personnel sought to avoid performing under the Task Order. It assigned "musical chair" project teams to delay project implementation. It dramatically increased the scope of the EMS Project. It repudiated performance under the contract. It refused to consider reuse of the equipment.

46. Upon information and belief, DOI had no intent to perform under this Task Order from the very beginning.

47. DOI reinforced its misrepresentations through the Questionnaire.

48. DOI's misrepresentations were made in order to induce TKCC to obtain and provide the equipment at favorable pricing terms under the Task Order.

49. DOI misled TKCC regarding its intent to enter into a lease to purchase contract and therefore is likewise in breach of contract.

50. DOI is equitably estopped from refusing to exercise the option periods.

51. DOI represented to TKCC, both before and at the time of the issuance of the Task Order, that it needed the EMS Project and wanted its more advanced capabilities instead of those available through its existing email applications. DOI is equitably estopped from refusing to exercise the option periods because TKCC detrimentally relied on DOI's representations by spending over $15 Million to purchase and provide the equipment to support the EMS Project.

52. TKCC has minimized its damages by selling the equipment at a commercially reasonable public auction. After deducting its costs, TKCC earned $392,525.91 at the auction. As a result, TKCC has suffered a loss of $13,155,260.39 and is entitled to receive that sum in litigation.

53. At all times throughout this process, all actions and representations made by employees of the United States Government were within the scope of their respective authority and duties.

**COUNT ONE**
**Breach of Contract**

54. The allegations of ¶¶ 1 through 53 are incorporated herein by reference.

55. TKCC and the United States had a valid contract.

56. The United States breached the contract.

57. TKCC has been damaged in the amount of $13,155,260.39 as the result of the United States' breach.

**COUNT TWO**
**Request For Equitable Adjustment**

58. The allegations of ¶¶ 1 through 53 are incorporated herein by reference.

59. As described above, the action of the contracting officer constituted a deductive change to TKCC's work under the Contract and Task Order.

60. TKCC complied with the necessary notice requirements and otherwise properly exhausted its administrative remedies.

61. TKCC is entitled to and hereby requests an equitable adjustment to the Contract and Task Order in order to be made whole as a result of the deductive change to the work.

**COUNT THREE**
**Misrepresentation and Equitable Estoppel**

62. The allegations of ¶¶ 1 through 53 are incorporated herein by reference.

63. DOI, through the statements and conduct of its authorized agents acting within the course and scope of their authority, affirmatively misrepresented that it would use the leased equipment for the full lease term and other material facts.

64. TKCC obtained and provided equipment in reliance on DOI's representations.

65. DOI made the representations with no present intent to perform according to its representations.

66. DOI is equitably estopped from refusing to exercise the Option Periods called for in the Contract.

67. TKCC has been damaged in the amount of $13,155,260.39 by DOI's tortious conduct.

WHEREFORE, Plaintiff TKC Communications, LLC respectfully prays that:

1. It have and recover compensatory damages from Defendants in the amount of $13,155,260.39;

2. For prejudgment interest from the date of breach of the contract;

3. For an award of reasonable settlement expenses, fees, attorney fees and costs;

4. Regarding Count Two, for costs and damages which encompass delay, labor, materials, unabsorbed or misallocated overhead and other indirect expenses, settlement expenses and appropriate profit; and

5. For such other and further relief as the Court may deem just and proper.

Date: May 16, 2008.

TKC COMMUNICATIONS, LLC

By: ______________________
Counsel

Kevin J. Cosgrove, Esq.
Email - kcosgrove@hunton.com
HUNTON & WILLIAMS LLP
Website - www.hunton.com
500 East Main Street, Suite 1000
Norfolk, Virginia 23510-3889
Tel. (757) 640-5342; Fax. (757) 625-7720
Counsel for Plaintiff TKC Communications, LLC

James R. Theuer, Esq.
Email - jtheuer@hunton.com
HUNTON & WILLIAMS LLP
Website - www.hunton.com
500 East Main Street, Suite 1000
Norfolk, Virginia 23510-3889
Tel. (757) 640-5373; Fax. (757) 625-7720
Of Counsel for Plaintiff TKC Communications, LLC

David M. Nadler, Esq.
Email - nadlerd@dicksteinshapiro.com
Robert J. Moss, Esq.
Email - mossr@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
Website - www.dicksteinshapiro.com
1825 Eye Street NW
Washington, DC 20006-5403
Tel. 202-420-2281; Fax. 202-420-2201
Of Counsel for Plaintiff TKC Communications, LLC

Leslie Wheelock, Esq.
Email - leslie.wheelock@qivliq.com
QIVLIQ, LLC - A Nana Company
Website - www.nana.com
13873 Park Center Road, Suite 400
Herndon, Virginia 20171
Tel. 571-323-5467; Fax. 571-323-6171
Of Counsel for Plaintiff TKC Communications, LLC